**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
DISTRICT OF NEW JERSEY

CHAMBERS OF
**SUSAN D. WIGENTON**
UNITED STATES DISTRICT JUDGE

MARTIN LUTHER KING COURTHOUSE
50 WALNUT ST.
NEWARK, NJ 07101
973-645-5903

October 15, 2020

Jared P. DuVoisin, Esq.
Tompkins, McGuire, Wachenfeld & Barry, LLP
3 Becker Farm Road
Suite 402
Roseland, NJ 07068
*Counsel for Plaintiff*

E. Michael Garrett, Jr., Esq.
Barrett Lazar, LLC
145 West Passaic Street
Maywood, NJ 07607
*Counsel for Defendant*

## LETTER OPINION FILED WITH THE CLERK OF THE COURT

**Re: Brightview Enterprise Solutions, LLC f/k/a Brickman Facility Solutions, LLC v. Farm Family Casualty Insurance Company
Civil Action No. 20-7915 (SDW) (LDW)**

Counsel:

Before this Court is Defendant Farm Family Casualty Insurance Company's ("Farm Family" or "Defendant") Motion to Dismiss Plaintiff Brightview Enterprise Solutions, LLC's ("Brightview" or "Plaintiff") Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). (D.E. 5.) This Court has jurisdiction pursuant to 28 U.S.C. § 1332. Venue is proper pursuant to 28 U.S.C. § 1441. This Court, having considered the parties' submissions, decides this matter without oral argument pursuant to Rule 78. For the reasons discussed below, Defendant's Motion to Dismiss is **DENIED**.

### I.   BACKGROUND & PROCEDURAL HISTORY[1]

Brightview is a landscaping company based in Pennsylvania. (Compl. ¶ 3.) It provides landscaping services for CBRE Inc. ("CBRE") locations, including a Bank of America branch in

---

[1] For the limited purposes of this Opinion, this Court treats the facts in the Complaint as true. The Complaint begins on page 19 of Defendant's Notice of Removal filing, which contains several other documents. (D.E. 1.) To prevent confusion, citations to the Complaint will be in the following form: "(Compl. ¶ __)".

Mount Holly, New Jersey ("Branch"). (*Id*. ¶ 7.) Brightview subcontracted out some of its duties to Michael J. Retzko d/b/a Retzko's Landscaping and Lawn Care ("Retzko"). (*Id*. ¶ 9.) Per its subcontracting agreement, Retzko obtained liability insurance from Farm Family, a company based in New York. (*Id*. ¶¶ 4, 11-12.) This insurance policy named Brightview and CBRE as additional insureds. (*Id*. ¶¶ 11-12.)

In 2015, Retzko, on behalf of Brightview and CBRE, was to overhaul the exterior landscape irrigation system at the Branch. (*Id*. ¶¶ 13-14.) Because it had no experience with such work, Retzko assigned this job to Jim Dunphy's LLC ("Dunphy"). (*Id*. ¶ 15.) No Dunphy employee had a certificate to perform such work as required by New Jersey law. (*Id*. ¶ 16.) Dunphy nevertheless worked on the Branch's irrigation system, and in doing so, allegedly caused a leak in the Branch's employee break room. (*Id*. ¶ 17.) This leak, in turn, caused the Branch's manager, Candice Morciglio ("Morciglio"), to slip and injure her head on June 20, 2015. (*Id*. ¶ 18.) Due to the effects of this slip, Morciglio hit her head again on July 1, 2015. (*Id*. ¶19.)

Morciglio sued CBRE, Brightview, Retzko, and Dunphy in New Jersey state court, alleging devastating traumatic brain injuries ("Morciglio Litigation"). (*Id*. ¶ 20.) Per its agreement with Retzko, Farm Family agreed to provide coverage for Brightview and CBRE for up to $1 million ("Policy Limit") for the Morciglio Litigation ("Policy").[2] (*Id*. ¶ 27.) Among other things, Morciglio alleged that CBRE, Brightview, and Retzko were negligent, pointing to evidence that Brightview was required to ensure subcontractors were properly certified, and that Retzko and Dunphy were not. (*Id*. ¶¶ 30-33.) Experts retained on the matter, including the expert for the Morciglio Litigation's defendants, concluded that Morciglio was totally and permanently disabled and suffered economic losses in the millions. (*Id*. ¶¶ 21-23, 36-40.)

Leading up to the January 2020 trial, Morciglio had a global demand of $7 million, but was willing to settle for $650,000 with Farm Family's insureds, and would be unwilling to settle once trial commenced. (*Id*. ¶¶ 44-45.) Farm Family offered $250,000, to which Morciglio did not respond. (*Id*. ¶¶ 47-48.) Prior to trial, Brightview (on behalf of itself and CBRE), without Farm Family, settled with Morciglio for $350,000. (*Id*. ¶ 51.) Thus, only Retzko, whose attorneys were directed and paid for by Farm Family, remained in the Morciglio Litigation. (*Id*. ¶¶ 53-54.)[3] At trial, Retzko's strategy was to shift as much blame as possible to Brightview and CBRE. (*Id*. ¶¶ 55-58.) Despite this, Retzko and Morciglio jointly omitted Brightview and CBRE from a proposed jury verdict sheet that included a line item for allocation of fault. (*Id*. ¶ 59.) Retzko succeeded at trial. (*Id*. ¶ 63.)

Brightview brought this matter before the Superior Court of New Jersey, Law Division: Essex County, on May 21, 2020, alleging one count of bad faith breach of contract. (D.E. 1 at 19, 33.) Farm Family removed to this Court on June 29, 2020 (*id.* at 4-6), then moved to dismiss on July 31, 2020 (D.E. 5), and the parties timely briefed the motion. (D.E. 7-9.)[4]

---

[2] As relevant here, the Policy required that Brightview "[c]ooperate" with Farm Family in any settlement, and that no insured will "voluntarily make a payment" settling the litigation, without Farm Family's consent. (D.E. 5-4 at 25.)
[3] Dunphy apparently settled for $650,000. (*See* Compl. ¶ 44.)
[4] This Court additionally permits and considers Brightview's sur reply. (D.E. 9.)

## II.  STANDARD OF REVIEW

An adequate complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Rule 8 "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level[.]"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief").

In considering a motion to dismiss under Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  *Phillips*, 515 F.3d at 231 (citations omitted).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) (discussing the *Iqbal* standard).  Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Iqbal*, 556 U.S. at 679.  If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to show "that the pleader is entitled to relief" as required by Rule 8(a)(2).  *Id.*

## III.  DISCUSSION

Under New Jersey law, an insurer "has a positive fiduciary duty to take the initiative and attempt to negotiate a settlement within the policy coverage."  *Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am.*, 323 A.2d 495, 507 (N.J. 1974) ("*Rova Farms*").  An insured has a cause of action against an insurer "whose bad faith in refusing to settle a personal injury action within its policy limits exposed its insured to a jury verdict substantially in excess of the policy limits."  *Ellington v. Cure Auto Ins.*, No. A-2470-16T4, 2017 WL 3081717, at *5 (N.J. App. Div. July 20, 2017) (citing *Rova Farms*, 323 A.2d at 507).

"Good faith" requires an insurer consider both the insured's and its own interests "in deciding whether or not to settle the case within the limits of the policy.  The [insurer] must weigh the conflicting interests by making its decision to settle or go to trial as if it had full coverage for whatever verdict may be recovered, regardless of policy limits."  *Rova Farms*, 323 A.2d at 508.  Where the insurer acts in bad faith in not settling, "an insured [is] permitted to [s]ettle the tort claims . . . and then recover from the insured the amount paid in settlement . . . up to the policy limits, provided that such sums were reasonable and were paid in good faith."  *Fireman's Fund Ins. Co. v. Sec. Ins. Co. of Hartford*, 367 A.2d 864, 871 (N.J. 1976) ("*Fireman's Fund*").

Farm Family provides two main arguments:  First, that Brightview breached the Policy when it independently settled the Morciglio Litigation, voiding any obligation of Farm Family to reimburse such settlement; and second, Brightview failed to allege bad faith.  This Court finds at this stage, however, Brightview has adequately pled its claim.

3

### A. Breach of the Policy

The Policy states that Brightview must "[c]ooperate" with Farm Family in the "settlement of the claim," and that "[n]o insured will, except at that insured's own cost, voluntarily make a payment . . . without [Farm Family's] consent" ("Settlement Clause"). (D.E. 5-4 at 25.)[5] Nevertheless, where the insurer first "violates its own contractual obligation" to consider, in good faith, the insured's interests in settlement, the insurer forfeits the right to control the settlement. *See Fireman's Fund*, 367 A.2d at 868. In such situation, the insured may "proceed to make a prudent good faith settlement," then "upon proof of the breach of the insurer's obligation and the reasonableness and good faith of the settlement made . . . [the insured may] recover the amount [paid]," up to the policy limit. *Id.* at 870. Therefore, if Brightview sufficiently alleges Farm Family acted in bad faith when not settling with Morciglio, it would plausibly allege that Farm Family forfeited its right to control settlement under the Settlement Clause.[6]

### B. Sufficiency of Allegations of Bad Faith

In turn, the parties dispute whether, to make a showing of bad faith, Brightview must plead that (1) the Morciglio Litigation was tried to verdict; and (2) it resulted in a judgment exceeding the Policy Limit. Farm Family argues these are necessary components, neither of which Brightview pleads. (*See* D.E. 5-1 at 19.) Farm Family also, at points, (3) argues that Brightview has failed to plead that Farm Family's settlement conduct was in bad faith.

First, a jury verdict is not necessary. *See Fireman's Fund*, 367 A.2d at 870 (noting that the insured "need not await the outcome of the trial of the negligence action" and "should not be required to wait until after the storm before seeking refuge when faced with a potential judgment far in excess of the limits of the policy" (internal quotation marks omitted)); *Ellington*, 2017 WL 3081717 at *4, 7 (finding plaintiff insured pled a bad faith claim where there was no "excess verdict" but he sufficiently alleged that his exposure "clearly exceeded the limits of" the liability policy).[7] In turn, second, a plaintiff need only allege that it was exposed to liability exceeding its policy limits. *Fireman's Fund*, 367 A.2d at 866 (lacking a jury verdict, but noting "the potential award against the insured is far in excess of the policy limits"). Brightview sufficiently alleges that its exposure exceeded the $1 million Policy Limit. (*See* Compl. ¶¶ 21-24, 36-40 (alleging Morciglio's significant injuries and economic loss between $2-7 million).)[8]

---

[5] D.E. 5-4 is the Policy, which is attached to Farm Family's moving brief. This Court may consider the Policy, which is integral to and explicitly relied upon by the Complaint. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). This Court, however, notes that it may not consider many other facts Farm Family presents, not found in the Complaint. *See Animal Sci. Prod., Inc. v. China Minmetals Corp.*, 34 F. Supp. 3d 465, 508 (D.N.J. 2014) (noting "[e]xtrinsic evidence is not relevant to a motion to dismiss")

[6] The reasonableness and good faith of Brightview's settlement is not at issue here. Farm Family cites *Griggs v. Bertram*, 443 A.2d 163 (N.J. 1982), and *New Jersey Eye Center, P.A. v. Princeton Ins. Co.*, 928 A.2d 25 (N.J. App. Div. 2007), to support its argument that, because of the Settlement Clause, Brightview's settlement is not binding on Farm Family. (*See* D.E. 5-1 at 17-18.) These cases, however, did not feature a situation in which the insurer allegedly refused to settle in bad faith. *See New Jersey Eye Ctr., P.A.*, 928 A.2d at 32-33; *Griggs*, 443 A.2d at 170-72.

[7] Farm Family cites *Rova Farms*, 323 A.2d 495, and *Wood v. New Jersey Mfrs. Ins. Co.*, 21 A.3d 1131 (N.J. 2011), for the proposition that a jury verdict is a necessary element. Though both note the presence of a jury verdict in *Rova Farms*, neither appear to require it, and this Court will not require one in light of *Fireman's Fund*.

[8] Farm Family argues that Brightview's liability was under the Policy Limit, or at the very least, highly contested. (*See, e.g.*, D.E. 8 at 2.) For example, it asserts that Morciglio's initial settlement request of $650,000 shows the weakness of her claim, and that Brightview's exposure was not truly over $1 million. (*See id.*) While this may

4

Third, at this stage, Brightview pleads facts "enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Brightview alleges that, given its potential financial exposure of millions, Farm Family's $250,000 offer does not reflect a good faith effort to consider the insureds' interests, and instead was a self-interested calculation that trial was worth the risk, given its own exposure was limited to $1 million. (Compl. ¶¶ 47-49.) Brightview additionally alleges that Farm Family's refusal to appropriately consider settlement forced Brightview (and CBRE) to independently settle, leaving Retzko, represented by Farm Family-paid and directed attorneys, the sole defendant at trial. (*Id.* ¶¶ 50-52, 54.) This allegedly allowed Farm Family to use the ultimately successful strategy at trial of placing total fault on the "empty chairs" of Brightview and CBRE. (*Id.* ¶¶ 53-57.) As evidence of Farm Family's bad faith maneuvering, Brightview alleges that the jury verdict form, approved by Retzko, omitted Brightview and CBRE from allocation of fault, despite Retzko's trial strategy of blaming them – reflecting Farm Family's *post hoc* attempt to "justif[y]" its "failure to engage on settlement." (*Id.* ¶¶ 59-61.)

Farm Family's challenge to this is primarily factual. For example, it argues that there was no bad faith, given its "meaningful" $250,000 settlement offer, when Brightview and CBRE ultimately settled for $350,000, and where there were "significant questions of liability" in the Morciglio Litigation. (D.E. 5-1 at 6, 25; D.E. 8 at 3.) While Brightview's theory is somewhat convoluted, taking its facts as true, giving them all reasonable inferences, and discounting Farm Family's factual challenges, which rely in part on facts not found in the Complaint, Brightview adequately pleads bad faith.[9] Therefore, this Court finds Brightview has adequately stated its claim, notwithstanding Farm Family's arguments that Brightview breached the Policy and failed to show bad faith.

### IV. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is **DENIED**. An appropriate Order follows.

                                        /s/ Susan D. Wigenton
                                        SUSAN D. WIGENTON, U.S.D.J

Orig: Clerk
cc: Parties
      Leda Dunn Wettre, U.S.M.J.

---

ultimately be shown true, such arguments are inappropriate at this juncture, where the Complaint is taken as true, and all reasonable inferences go to Plaintiff. Additionally, Farm Family argues that *Fireman's Fund* is inapplicable. It points out (1) there was no settlement offer in *Fireman's Fund* under the Policy Limit, which was not the case here, (2) that the insured's financial exposure was more concretely established, and (3) *Fireman's Fund* did not have multiple defendants, making liability clearer. (*See* D.E. 5-1 at 26; D.E. 8 at 6.) These arguments fail to undermine that, at this stage, giving Brightview all reasonable inferences, Brightview has plausibly alleged that its financial exposure was greater than the Policy Limit.

[9] Farm Family additionally argues that allowing the instant case to proceed would "open the floodgates to other insureds to settle claims against them because of a disagreement with an insurer as to liability and damages evaluations." (D.E. 5-1 at 27.) The Court does not share this concern, as not only will the insurer's bad faith need to be shown, but "the defaulting insurer [will] receive[] all the protection to which it is entitled from the requirement that the insured, in establishing his damages, prove . . . that the settlement was made in good faith and for a reasonable amount." *Fireman's Fund*, 367 A.2d at 873.

5