<u>**NOT FOR PUBLICATION**</u>

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| BRIGHTVIEW ENTERPRISE SOLUTIONS, LLC f/k/a BRICKMAN FACILITY SOLUTIONS, LLC, | Case No. 20cv7915 (EP) (AME) |
| Plaintiff, | **OPINION** |
| v. | |
| FARM FAMILY CASUALTY INSURANCE COMPANY., | |
| Defendant. | |

**PADIN, District Judge.**

Before the Court are two fully-briefed motions for summary judgment pursuant to Fed. R. Civ. P. 56. Defendant Farm Family Casualty Insurance Company ("Farm Family") moves for summary judgment dismissing Plaintiff BrightView Enterprise Solutions, LLC f/k/a Brickman Facility Solutions' ("BrightView") bad faith breach of contract claim. *See* D.E. 47-1 ("Def. Mot."). BrightView moves for summary judgment dismissing Farm Family's counterclaim seeking declaratory relief and recoupment of defense costs incurred in an underlying suit. *See* D.E. 46-1 ("Pl. Mot."). The Court decides both summary judgment motions without oral argument. *See* Fed. R. Civ. P. 78(b); L.Civ.R.78(b). For the reasons set forth below, Farm Family's motion will be **DENIED** and BrightView's motion will be **GRANTED**.

## I.   BACKGROUND

BrightView is a landscaping company with operations throughout New Jersey and its principal office in Pennsylvania. D.E. 1 ("Compl.") ¶ 3. BrightView provides landscaping

services for CBRE, Inc. ("CBRE") locations, including a Bank of America branch in Mount Holly, New Jersey ("BoA Premises"). *Id.* ¶ 7; *see generally* D.E. 47-7, Exh. B ("CBRE-BrightView Contract"). BrightView subcontracted some of its duties to Michael J. Retzko d/b/a Retzko's Landscaping and Lawn Care ("Retzko"). *Id.* ¶ 9. The subcontracting agreement with BrightView ("BrightView-Retzko Subcontract") prohibited Retzko from further subcontracting any of its duties and explicitly required that all work be performed by licensed personnel. D.E. 53-2 ("BrightView Pre-Trial Report") at 15; D.E. 47-8 ¶¶ 8(c), 16(d).

Also pursuant to the BrightView-Retzko Subcontract, Retzko obtained liability insurance from Farm Family, a property and casualty insurance provider authorized to write insurance in New Jersey with its corporate headquarters in New York. Compl. ¶¶ 4, 11-12; *see generally* D.E. 47-6 ("Insurance Policy"); BrightView-Retzko Subcontract ¶ 9. The Insurance Policy named BrightView and CBRE as additional insureds and provided a $1 million coverage limit. Compl. ¶¶ 11-12; *see also* Insurance Policy at 5, 37; D.E. 47-2 ("Def. SOMF") ¶ 2.

In January 2015, on behalf of BrightView and CBRE, Retzko planned to overhaul the exterior landscape irrigation system at the BoA Premises. Compl. ¶¶ 13-14; Def. SOMF ¶ 4. Retzko did not perform this work directly; instead, Retzko contracted with Jim Dunphy's Landscaping, LLC ("Dunphy") to complete this work. Compl. ¶ 15; D.E. 47-9 ("Retzko-Dunphy Subcontract"); Def. SOMF ¶ 4. Dunphy's owner indicated that it was his understanding that while New Jersey required a license to install new irrigation systems, no license was required to perform repairs or modifications to existing irrigation systems. *See* BrightView Pre-Trial Report at 18. Dunphy was not licensed.

In June 2015, Candice Morciglio ("Morciglio"), a Bank of America employee slipped and fell on a puddle of water while on duty on the BoA Premises. Def. SOMF ¶ 7; D.E. 47-10

("Morciglio Compl."). The parties dispute whether Morciglio hit her head when she fell. Approximately one week after Morciglio's first fall, Morciglio allegedly fell again,[1] striking her head. Def. SOMF ¶ 9; Morciglio Compl. In a state suit brought against CBRE, BrightView, Retzko, and Dunphy, Morciglio alleged that she was permanently disabled as a result of her first slip-and-fall on the BoA Premises ("Morciglio Suit"). *See* Def. SOMF ¶ 9; Morciglio Compl.

Pursuant to the terms of the Insurance Contract,[2] Farm Family agreed to defend and provide coverage on a primary, non-contributory basis up to its $1 million policy limit to CBRE, BrightView, and Retzko. Def. SOMF ¶ 13.

In January 2020, at a settlement conference, just days before the start of the trial in the Morciglio Suit, Judge Harrington indicated that an offer in the range of $650,000 to $750,000 from Farm Family offered on behalf of all three defendants (CBRE, BrightView, and Retzko) would likely settle the case. D.E. 47-21 ("Stiehl Dep.") at 91:1-4, 94:23-95:2. The day before that conference, Bonnie Stiehl[3] recommended to Farm Family that "it would be a good idea to try and settle" the Morciglio case and that it could "be resolved fully up to 650k rather than try the case." *See id.*; *see also* D.E. 47-20, ("O'Meara Dep.") at 36:20-25. But Farm Family did not cede to Stiehl's recommendation, and instead, settlement authority was limited to $400,000. O'Meara Dep. at 37:13-38:15.

Christopher O'Meara[4] testified that Farm Family reached the $400,000 number after approximately one hour of cumulative internal discussion and that the number was based on "the

---

[1] Not caused by water.
[2] And a declaration stating the same from Farm Family that BrightView was entitled to additional insured status pursuant to the Insurance Contract's terms. Def. SOMF ¶ 11.
[3] Stiehl was the Farm Family claim examiner tasked with evaluating the Morciglio Suit.
[4] O'Meara was a Farm Family litigation examiner, who was on the claims' committee charged with evaluating the Morciglio Suit.

expertise and the knowledge and the judgment of the people involved and their experience[,]" and not an established process, such as a checklist or computer program. *Id*. at 39:3-40:10. But $400,000 was never offered to Morciglio; $250,000 was the highest settlement offer made. *Id.* at 43:3-18.

BrightView then sent Farm Family a letter demanding that it try to settle the Morciglio Suit on its behalf within the policy limits. D.E. 5-16 ("Pl. Demand"). In that letter, BrightView stated that it believed that Farm Family's $250,000 settlement offer was "astoundingly low—just over 4% of Plaintiffs' 'hard number' damages [of over $6 million in future medical expenses and economic losses.]" *Id.* And BrightView notified Farm Family that it would settle the Morciglio Suit on behalf of itself and CBRE, and later would seek to recover that settlement amount from Farm Family. *See id.* BrightView followed through and settled the Morciglio Suit on behalf of itself and CBRE for $350,000. Def. SOMF ¶ 22; D.E. 47-24.

Farm Family proceeded to trial on the Morciglio Suit, but the only remaining defendant was Retzko, as all other defendants had settled. Def. SOMF ¶ 24; D.E. 47-25. The jury did not return a verdict in favor of Morciglio. Def. SOMF ¶ 26.

Following through on its statement to Farm Family, that it would seek to recover from it the settlement amount BrightView paid on behalf of CBRE and itself in the Morciglio Suit, BrightView filed a bad faith breach of contract claim against Farm Family. *See generally* Compl. Farm Family filed a counterclaim seeking declaratory relief and a recoupment of the costs it paid to defend BrightView in the Morciglio Suit. D.E. 15.

Both parties move for summary judgment: Farm Family moves for summary judgment on BrightView's claim and BrightView moves for summary judgment on Farm Family's counterclaim. These motions are ripe for the Court's review.

4

## II.     LEGAL STANDARD

A court may grant summary judgment "if the [moving party] shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 136, 145-46 (3d Cir. 2004). A fact is material if it "might affect the outcome of the suit under the governing law" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a court from granting a summary judgment motion. *See id.*

The moving party must support its motion by citing to specific materials in the record. Fed. R. Civ. P. 56(c)(1)(A). Once the moving party has adequately supported its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324 (internal quotation marks omitted). The nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. But the nonmoving party "cannot create an issue of fact merely by [] denying averments [] without producing any support evidence of the denials." *Thimons v. PNC Bank,* NA, 254 F. App'x 896, 899 (3d Cir. 2007) (citation omitted). Where the nonmoving party's "evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50). But "[i]f reasonable minds could differ as to the import of the evidence," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250-51.

In reviewing a motion for summary judgment, the Court "may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'"  *Marina v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255).  But if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case[,]" then there is "no genuine issue as to any material fact[,]" and summary judgment is appropriate.  *Celotex Corp.*, 477 U.S. at 322.

## III.   DISCUSSION

### A. Genuine Disputes of Material Fact Preclude Summary Judgment on BrightView's Claim

Farm Family argues that it is entitled to summary judgment as to BrightView's bad faith breach of contract claim, because there is no genuine dispute that it negotiated in good faith with the plaintiff in the Morciglio Suit, and thus, it satisfies the applicable *Rova Farms* good faith standard.  BrightView responds that genuine disputes of material fact exist because Farm Family's evaluation of the Morciglio Suit's settlement value was cursory and not intelligently made, and therefore, settlement negotiations were not in good faith.  The Court concludes that genuine disputes of material fact exist as to whether Farm Family acted in good faith.

In the pivotal case of *Rova Farms Resort, Inc. v. Investors Insurance Co. of America*, an insured brought a third-party suit against its insurer after the insurer, over the protestations of the insured who feared an excess verdict and whose insurance policy limit was $50,000, made a settlement offer of only $12,500 in the underlying suit, opting instead to contest liability at trial. *See* 65 N.J. 474, 481 (1974).  The jury returned a verdict of $225,000 in the underlying suit.  *Id.* The insurer paid the policy limit and the insured then filed a third-party suit against its insurer to

6

recoup the excess judgment above the policy limit that it paid the underlying plaintiff—$175,000. *See id.*

The New Jersey Supreme Court ultimately held that "an insurer, having contractually restricted the independent negotiating power of its insured, has a positive fiduciary duty to take the initiative and attempt to negotiate a settlement within the policy coverage." *Id.* at 496; *see also Am. Hardware Mut. Ins. Co. v. Harley Davidson of Trenton, Inc.*, 124 F. App'x 107 (3d Cir. 2005) (outlining the *Rova Farms* good faith standard required by an insurer in settlement negotiations: "(1) if a jury could find liability, (2) where the verdict could exceed the policy limit, and (3) the [underlying plaintiff] is willing to settle within the policy limit, then (4) in order to be deemed to have acted in good faith, the insurer must initiate settlement negotiations and exhibit good faith in those negotiations."). Additionally, where "any adverse verdict is likely to exceed the policy limit, the boundaries of good faith become more compressed in favor of the insured, and the carrier can justly serve its interests and those of its insured only by treating the claim as if it alone might be liable for any verdict why may be recovered." *Rova Farms* at 493.

Notably, the court outlined that an insurer's good faith decision not to settle within the policy limits:

> "must be a thoroughly honest, intelligent and objective one. It must be a realistic one when tested by the necessarily assumed expertise of the [insurer]." This expertise must be applied, in a given case, to a consideration of *all the factors* bearing upon the advisability of a settlement for the protection of the insured. While the view of the [insurer] or its attorney as to liability is one important factor, a good faith evaluation requires more. It includes consideration of the anticipated range of a verdict, should it be adverse; the strengths and weaknesses of all of the evidence to be presented on either side so far as known; the history of the particular geographic area in cases of similar nature; and the relative appearance, persuasiveness, and likely appeal of the claimant, the insured, and the witnesses at trial.

*Id.* at 489-90 (emphasis in original) (quoting *Bowers v. Camden Fire Ins. Assoc.*, 51 N.J. 62, 71 (1968)).  But the mere rejection of a settlement offer within the policy limit and a trial verdict in excess of that policy limit does not, without more establish bad faith.  *Radio Taxi Service, Inc. v. Lincoln Mutual Ins. Co.*, 31 N.J. 299, 305 (1960).  Moreover, "evaluating whether an [] insurer negotiated in 'good faith' must not be done in hindsight[;]" instead, "whether [an insurer] negotiated in 'good faith' [] depends only on the facts known to it at [the time of the negotiation.]" *Hartford Cas. Ins. v. Liberty Mut. Fire Ins. Co.*, 2021 U.S. Dist. LEXIS 60663, at *11, *17 (D.N.J. Mar. 29, 2021) (citations and internal quotation marks omitted); *see also Palmer v. New Jersey Manufacturers Ins. Co.*, 2017 N.J. Super. Unpub. LEXIS 3060, at *8 (App. Div. Dec. 14, 2017) ("[T]he perfect vision of hindsight is not the lens through which our courts assess compliance with good-faith obligations.") (citation omitted).

In another pivotal case, *Fireman's Fund Ins. Co. v. Sec. Ins. Co. of Hartford*, the New Jersey Supreme Court held that where an insurer acts in bad faith, and the insured settles the underlying suit, then the insured may recover that settlement amount from its insurer up to the policy limit, so long as that amount is reasonable and paid in good faith.  72 N.J. 63, 76 (1976); *see id.* at 71 (noting that while it is the insurer who typically enjoys the right to control settlements, "it is a right which an insurer forfeits when it violates its own contractual obligation to the insured.") (internal citations omitted).

Critically, in *Wood v. New Jersey Mfrs. Ins. Co.*, the New Jersey Supreme Court recognized that a *Rova Farms* bad faith claim will hinge, to some degree, upon the credibility and persuasiveness of fact witnesses, as well as on expert testimony concerning what went wrong in settlement negotiations and why.  206 N.J. 562, 571 (2011).  The court held that determining

whether an insurer acted reasonably, and thus, whether the *Rova Farms* good faith standard is satisfied, is a question of fact, for a jury. *See id.* at 579.

With this context, whether Farm Family acted in good faith in its settlement negotiations in the Morciglio Suit involves questions of fact. Thus, the Court may only grant Farm Family's summary judgment motion if no genuine disputes remain as to whether Farm Family acted in good faith remain. As detailed below, genuine disputes of material fact supported by record evidence persist, and therefore, Farm Family's summary judgment motion will be denied.

Specifically, the parties dispute whether Farm Family's evaluation of the Morciglio Suit's settlement value was made in bad faith. BrightView contends that Farm Family's evaluation was cursory and not made in an objective and intelligent manner; and therefore, when Farm Family made its final settlement offer of $250,000, it was made in bad faith. *See* D.E. 53 ("Pl. Opp'n") at 4-5, 9-10. Farm Family argues that its evaluation was not made in bad faith, because, in short, it believed that its insureds had a strong case in the underlying suit. *See* Def. Mot. at 7-9.

The first piece of record evidence supporting the denial of summary judgment in Farm Family's favor can be found in Stiehl's testimony. Just days before the scheduled Morciglio Suit trial, Stiehl notified her supervisors that Judge Harrington believed Farm Family could settle the suit on behalf of its three insureds for $650,000, and recommended that the case be settled for that amount. *See* Stiehl Dep. at 91:1-4, 94:23-95:2. Specifically, Stiehl recommended that Farm Family should:

> try and settle the case, if possible, rather than try it. The reason being, as I said before, we have multiple attorneys. It's at least a three week trial. It's multiple expensive experts. There's a wild card in terms of the plaintiff and what she's going to do in the courthouse, in front of the jury…I wanted to be sure also that [Farm Family] knew, and I did explain this verbally, that, you know, this is [] Judge[ Harrington's] recommendation.

*Id.* at 92:11-24.

Rather than take Stiehl's recommendation, the highest settlement authority Farm Family gave for the Morciglio Suit was $400,000.  *See id.* at 95:15-19, 101:21-102:11.  But Farm Family, through Stiehl, never actually offered the full $400,000; instead, the highest settlement offer made was $250,000.  *See* D.E. 5-13 ("Stiehl Dec.") ¶ 4; *see also* D.E. 5-17; O'Meara Dep. at 43:9-18. Notably, one day before trial, BrightView informed Farm Family that it found the $250,000 settlement offer to be "woefully deficient. It is akin to extending zero authority under the circumstances."  D.E. 5-17.  Farm Family still chose not to raise its settlement offer.

The fact that Judge Harrington informed Farm Family that it could settle the Morciglio Suit for $650,000, coupled with Stiehl's recommendation that Farm Family should authorize a $650,000 settlement, raises a genuine dispute as to whether Farm Family acted intelligently, and in turn, in good faith, when it decided to limit settlement authority to $400,000 and offered only $250,000.

The second piece of record evidence supporting the denial of summary judgment in Farm Family's favor can be found in O'Meara's testimony.  When asked how Farm Family reached the $400,000 settlement authority number, O'Meara testified:

> [The committee] would have looked at the liability situation and add[ed] our view of the chances and the prospects of success for the plaintiff.  We would have looked at the full value, the wors[t] case scenario, and we would have made a judgment as to whether we thought the plaintiff had a likelihood of prevailing at trial and what number would have been appropriate to offer the plaintiff to avoid having to take the case to trial, and $400,000 would have been the number that was considered reasonable as a settlement number.

O'Meara Dep. at 37:24-38:15.

Additionally, when asked how much time the Farm Family claims' committee spent to come up with the final $400,000 number, O'Meara, guessed:

10

> [B]etween the time that all of us put into the consideration, I would approximate maybe an hour. You know, bear in mind we had all become somewhat familiar with the file at this point but in re-reviewing things in considering what was in the file, new information, if I'm going to be asked to put a number on it, I would guess an hour.

*Id.* at 39:3-11.

Then, when asked whether Farm Family had a document outlining the process Farm Family used for evaluations and whether a specific process, checklist, or computer program was used to reach the $400,000 number in the Morciglio Suit, O'Meara responded that there was no specific process, but instead that "it's really down to the expertise and the knowledge and the judgment of the people involved and their experience." *Id.* at 39:13-40:10.

O'Meara was also asked how much time the committee spent on each claim during a typical meeting. In response, he testified that it "very much depends on the issues to be discussed. Some of them can be relatively quick, others can extend for 30 minutes, 45 minutes." *Id.* at 49:13-19. With respect to the Morciglio Suit, O'Meara recalled, "I have sort of an impression that it was given a fairly thorough discussion that may have lasted around 15 to 20 minutes." *Id.* at 49:20-50:1.

The statements set out above from O'Meara's testimony could lead a jury to conclude that Farm Family's settlement negotiations were cursory and not made intelligently, such that those negotiations were in bad faith. For example, O'Meara's testimony that the Farm Family claims' committee spent only 15 to 20 minutes discussing the Morciglio Suit at a meeting, unlike other claims discussed for up to 45 minutes, and his testimony that the cumulative amount of time and consideration Farm Family gave to the Morciglio Suit was about an hour, could lead a jury to find that Farm Family's evaluation was cursory. Additionally, O'Meara's testimony that Farm Family did not have a procedure for evaluating the settlement value of claims, but instead, that the final

11

settlement value was derived only through the expertise and the judgment of the claims'
committee, could also lead a jury to find that Farm Family's evaluation of the Morciglio Suit was
subjective and cursory.

Thus, as outlined above, Stiehl and O'Meara's testimony raise genuine disputes of material
fact as to whether Farm Family acted in bad faith.  Accordingly, Farm Family's summary judgment
will be denied.

### B. Farm Family's Counterclaim Will Be Dismissed as Redundant and as Unsupported by Any Authority

Next, the Court addresses BrightView's motion for summary judgment as to Farm Family's
declaratory judgment counterclaim, which seeks two forms of relief: a declaration that Farm
Family has no obligation to reimburse BrightView for its voluntary settlement in the Morciglio
Suit, as well as the recoupment of costs Farm Family incurred to defend BrightView in the
Morciglio Suit.  BrightView contends that Farm Family's counterclaim is redundant because it
repackages Farm Family's affirmative defenses, and adjudication on the merits of BrightView's
claim will render Farm Family's counterclaim moot.  Farm Family does not directly respond to
this contention; instead, Farm Family, argues that it seeks affirmative relief: that the Court compel
BrightView to reimburse Farm Family for the defense costs it paid to BrightView in the Morciglio
Suit.  The Court agrees with BrightView.

First, the Court will address Farm Family's request for declaratory relief.  Critically, when
"a request for declaratory relief raises issues already presented in the complaint and answer, a
counterclaim may be stricken as redundant since a resolution of the original claim will render the
request for a declaratory judgment moot." *ProCentury Ins. Co. v. Harbor House Club Condo.
Ass'n, Inc.*, 652 F. Supp. 2d 552, 556 (D.N.J. 2009) (quotations omitted); *see also Aldens, Inc. v.
Packel*, 524 F.2d 38, 51-52 (3d Cir. 1975) (noting that a court may dismiss a counterclaim for

declaratory relief "where there is a 'complete identity of factual and legal issues' between the parties' respective requests for relief."); *Kieran v. Johnson-March Corp.*, 7 F.R.D. 128, 131 (E.D.N.Y. 1945) ("[I]n a litigation which is bound to result in one of two ways, and where either result will set the matter at rest forever, then defendant, under the guise of invoking the declaratory judgment statute, should not be permitted to say in substance that he wants a judgment in his favor, and no more."); 6 Wright & Miller, Fed. Practice and Procedure § 1406 ("When [a declaratory judgment counterclaim raises] issues that already have been presented in plaintiff's complaint…a party might challenge the counterclaim on the ground that it is redundant and the court should exercise its discretion to dismiss it.").

Here, Farm Family's declaratory judgment counterclaim would be subsumed by the adjudication on the merits of BrightView's bad faith breach of contract claim. *See Lilac Dev. Grp., LLC v. Hess Corp.*, 2016 U.S. Dist. LEXIS 73862, at *9 (D.N.J. June 7, 2016).  Specifically, if BrightView succeeds on its claim, then Farm Family's position—in its counterclaim—that it has no obligation to reimburse BrightView for its unilateral settlement in the Morciglio Suit is inherently incorrect.  But if BrightView is unsuccessful on its claim, then Farm Family's position that it need not reimburse BrightView will inherently be correct.  In other words, finding that Farm Family acted in bad faith in the Morciglio Suit settlement negotiations will resolve both BrightView's bad faith breach of contract claim, as well as Farm Family's declaratory judgment counterclaim.  Accordingly, the Court will strike Farm Family's request for declaratory relief as redundant since resolution of BrightView's claim will render Farm Family's request moot.  *See ProCentury Ins. Co.*, 652 F. Supp. 2d at 556 (citing *University Patents, Inc. v. Kligman*, 1991 U.S. Dist. LEXIS 11917, at *2-3 (E.D. Pa. 1991)) (internal citation omitted).

13

Next, the Court addresses Farm Family's request to recoup the costs it paid to defend BrightView in the Morciglio Suit.  This turns on the terms of the parties' Insurance Contract. Interpretation of an insurance contract is a question of law for a court to determine.  *See, e.g.*, *Simonetti v. Selective Ins. Co.*, 372 N.J. Super. 421, 428 (App. Div. 2004).  In *Mem'l Props., LLC v. Zurich Am. Ins. Co.*, the New Jersey Supreme Court provided the following helpful guidance:

> Insurance policies are construed in accordance with principles that govern the interpretation of contracts; the parties' agreement will be enforced as written when its terms are clear in order that the expectations of the parties will be fulfilled. The terms of insurance contracts are given their plain and ordinary meaning, with ambiguities resolved in favor of the insured. Nonetheless, courts cannot write for the insured a better policy of insurance than the one purchased.

210 N.J. 512, 414 (2012) (citation omitted).

Moreover, "[t]he duty to defend is an insurer's contractual obligation to provide a legal defense in any lawsuit brought against the insured that alleges and seeks damages for an event covered by the insurance policy."  *Republic Franklin Ins. Co. v. Travelers Cas. Ins. Co. of Am.*, 2022 U.S. Dist. LEXIS 118407, at *13 (D.N.J. July 6, 2022) (citations omitted).

Here, the parties do not dispute that Farm Family had a contractual obligation—under the Insurance Contract—to provide BrightView with a legal defense in the Morciglio Suit.  *See* D.E. 47-16 (noting Farm Family's agreement to defend and indemnify BrightView on a primary, non-contributory basis up to its $1 million policy limit in the Morciglio Suit without any reservation); *see also* Insurance Policy at 22-25 (setting out Farm Family's contractual obligations to defend BrightView, its insured, and BrightView's respective obligations to Farm Family, including its obligation to cooperate with Farm Family's defense strategy).  Significantly, the Insurance Contract's terms do not provide for the relief that Farm Family now seeks; namely, that Farm Family is entitled to recoup expended defense costs if BrightView breaches its contractual

14

obligations.  And Farm Family does not point to any other record evidence that suggests it is entitled to such relief, nor does Farm Family argue that there are any relevant ambiguities in the insurance contract that could lead to the interpretation that it is entitled to recoup defense costs from BrightView.

Furthermore, as BrightView points out, Farm Family presents no precedential authority for its proposition that it is entitled to recoup defense costs from its insured where, as here, it is not required by the Insurance Contract.  Thus, the Court is satisfied that Farm Family has not raised any genuine disputes of material fact that preclude summary judgment in favor of BrightView as to Farm Family's request to recoup defense costs in its counterclaim.  Accordingly, the Court will strike Farm Family's request to recoup defense costs from BrightView.

Because the Court will strike Farm Family's request for declaratory relief and its request to recoup defense costs from BrightView, Farm Family's counterclaim will be dismissed in its entirety.

## IV.    CONCLUSION

For the reasons stated above, Farm Family's summary judgment as to BrightView's claim will be **DENIED**, and BrightView's summary judgment as to Farm Family's counterclaim will be **GRANTED**.  An appropriate Order accompanies this Opinion.

Dated: February 7, 2023

_____
Evelyn Padin, U.S.D.J.